## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

ROBERT BOSCH LLC,                    )
                                     )
                     Plaintiff,      )
                                     )
      -v-                            )          Civil Action No. 2:09-cv-14468
                                     )
A.B.S. POWER BRAKE, INC.,            )          Judge Patrick J. Duggan
PEDRO GOMEZ,                         )
LUCIO GOMEZ, and                     )          Magistrate Michael J. Hluchaniuk
GUILLERMO GOMEZ,                     )
                                     )
                     Defendants.     )
_____ )

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF QUICKBOOKS DATABASE AND FOR SANCTIONS; AND REQUEST FOR EXPEDITED RULING

Pursuant to Federal Rule of Civil Procedure 37(a), Plaintiff Robert Bosch LLC ("Bosch") respectfully moves the Court to compel discovery from Defendant A.B.S. Power Brake, Inc. ("ABS"). In particular, Bosch requests an order from the Court that (i) compels ABS to produce a copy of its QuickBooks accounting electronic database to Bosch *immediately*, (ii) if Defendants fail to do so within three business days, authorizes Bosch's forensic vendor, which holds the database image, to release it to Bosch's counsel, and requires that Defendants pay for the vendor's expenses within 10 days of invoicing for such expense, and (iii) requires Defendants to pay sanctions to Bosch.

As set forth in the attached Memorandum, ABS's QuickBooks data is responsive to a number of Bosch's Requests for Production and Interrogatories to ABS, and Defendants' counsel, Mr. Brian Kinder, has repeatedly represented that it would be much less burdensome for Bosch to obtain the information it needs from this QuickBooks data than it would be for Bosch to scour through the 80,000 pages of paper documents Bosch collected from ABS's facilities.

On October 19, 2011, Defendants agreed that Bosch would have this information "immediately." *Four* months and multiple promises later, Defendants have yet to produce it.

Bosch has repeatedly attempted in good faith to resolve this matter without the need for judicial intervention, exchanging extensive correspondence with Mr. Kinder over the course of several months.  Notwithstanding Mr. Kinder's acknowledgement that the database should be produced, Defendants continue to stonewall and delay nonetheless.  Accordingly, Bosch has no choice but to bring this matter before the Court.

As discussed in the accompanying Memorandum of points and authorities and supporting Declaration of Bosch's lead counsel, Belinda J. Scrimenti, Bosch respectfully requests that the Court order ABS to produce its QuickBooks data for Bosch's counsel to review so the parties can move this case forward.

Bosch has invested significant expense in trying to obtain this information from Defendants, and therefore also requests an award of sanctions pursuant to Federal Rules of Procedure 37(a)(5)(A) and 37(c), as well as the Court's inherent power.  Bosch seeks sanctions to cover the attorneys' fees Bosch has incurred in preparation of this Motion, expenses otherwise incurred as a result of Defendants' failure to produce the QuickBooks database, and the legal fees incurred pending receipt of the database in the far more labor-intensive and time-consuming review of the paper documents.

Finally, in light of the upcoming close of discovery on March 30, 2012, before which date Bosch must depose Defendants and relevant third parties, Bosch respectfully requests that the Court consider this Motion on an expedited basis.  Bosch further requests that the Court hold a further

informal scheduling conference (with counsel appearing personally) to address the resulting

difficulties for Bosch in now completing its discovery.


Respectfully submitted,

Dated:  February 24, 2012                  PATTISHALL, McAULIFFE, NEWBURY,
                                            HILLIARD & GERALDSON LLP

WIENNER & GOULD, P.C.              By: s/Belinda J. Scrimenti_____
Seth D. Gould (Bar No. P45465)         Belinda J. Scrimenti (Bar. ID No. 6288885)
950 W. University Drive, Suite 350     Bradley L. Cohn
Rochester, Michigan 48307              Jeffrey A. Wakolbinger
Telephone:  248-841-9400               311 S. Wacker Drive, Suite 5000
Fax:  248-652-2729                     Chicago, Illinois 60606
E-mail:  sgould@wiennergould.com       Telephone:  312-554-8000
                                       Fax:  312-554-8015
                                       E-mail:  bscrimenti@pattishall.com

                                   *Attorneys for Plaintiff Robert Bosch LLC*

## CERTIFICATE OF CONCURRENCE

Pursuant to Local Rule 7.1 and Fed. R. Civ. P. 37, the undersigned counsel for Plaintiff Bosch advises that she has attempted to resolve the issues set forth in this Motion without the Court's intervention on numerous occasions.  On January 31, 2012, the undersigned counsel exchanged correspondence with Brian Kinder, counsel for all Defendants, setting a deadline of February 3, 2012, by which Defendants would have to make ABS's QuickBooks database available to Bosch's counsel for review or else Bosch would file this Motion to Compel. Defendants did not make the database available by February 3, so, on February 7 and 8, 2012, the undersigned counsel met and conferred in person with Mr. Kinder to explain Bosch's intention to bring this Motion.

Dated:  February 24, 2012     s/ Belinda J. Scrimenti
             Belinda J. Scrimenti
             (Bar. ID No. 6288885)
             311 S. Wacker Drive, Suite 5000
             Chicago, Illinois 60606
             Telephone:  312-554-8000
             E-mail:  bscrimenti@pattishall.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

ROBERT BOSCH LLC,                          )
                                           )
                    Plaintiff,             )
                                           )
        -v-                                )        Civil Action No. 2:09-cv-14468
                                           )
A.B.S. POWER BRAKE, INC.,                  )        Judge Patrick J. Duggan
PEDRO GOMEZ,                               )
LUCIO GOMEZ, and                           )        Magistrate Michael J. Hluchaniuk
GUILLERMO GOMEZ,                           )
                                           )
                    Defendants.            )
_____)

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF QUICKBOOKS DATABASE**
**AND FOR SANCTIONS; AND REQUEST FOR EXPEDITED RULING**

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, Plaintiff Robert Bosch

LLC ("Bosch") respectfully moves the Court to compel Defendant A.B.S. Power Brake, Inc.

("ABS") to produce a copy of its QuickBooks accounting database to Bosch.  As set forth below,

ABS does not disagree that Bosch is entitled to this data; *it simply will not produce it*.

During the inspection of documents at Defendants' premises on October 19, 2011,

Defendants' counsel, Mr. Brian Kinder, agreed to let Bosch's counsel access the QuickBooks

database "immediately."  Late that night, however, Mr. Kinder emailed to express concern that

some of this information might be "privileged attorney payments" and requested "a few minutes

*the next day* to remove that information.  *Four months later*, Defendants have yet to produce this

database.  Despite several representations to Bosch and to the Court that this data would obviate

the need to review Defendants' comparable paper invoices and that the electronic database

would be produced, Defendants have not done so.

Accordingly, pursuant to Rules 37(a)(5)(A) and 37(c), as well as the Court's inherent authority, Bosch also seeks sanctions from Defendants in the form of the expenses Bosch has incurred in preparation of this Motion, and as Bosch has otherwise incurred as a result of Defendants' failure to produce the QuickBooks database, and the legal fees incurred in review of the paper documents prior to receipt of the electronic database.

## I.    **FACTS**

Bosch's complaint asserts that Defendants sell infringing and counterfeit hydraulic braking units under Bosch's trademarks HYDRO-MAX and HYDRO-BOOST, as well as Defendants' confusingly similar mark ELECTRO-HYDROBOOST.  In addition to seeking an injunction to halt the infringing sales, Bosch seeks all damages available under the Lanham Act for trademark infringement and counterfeiting.  To obtain an award of damages under 15 U.S.C. § 1117, Bosch must prove Defendants' revenues from their sales of the accused products.

On April 5, 2011, Bosch served its First Sets of Interrogatories and Requests for Production of Documents on ABS.[1]  (Declaration of Belinda J. Scrimenti in Support of Plaintiff's Motion to Compel Production of QuickBooks Database and for Sanctions; and Request for Expedited Ruling ("Scrimenti Dec."), ¶ 3 & Exs. 1(a), 2(a).)  ABS served its initial responses on May 9, 2011, and supplemented its responses to Bosch's interrogatories on July 18, 2011.  (Scrimenti Dec., ¶ 3 & Exs. 1(b)-(c), 2(b).)  For many of ABS's answers to Bosch's interrogatories—including answers regarding ABS's total annual sales (Interrogatory No. 2), annual sales of accused products (Nos. 4–5), suppliers (No. 9), and customers (No. 10)—ABS

---

[1] Also on April 5, 2011, Bosch served a set of interrogatories and document requests on each of the individual Defendants.  Several of these requests also sought information that would be present in Defendants' QuickBooks database.

responded that Bosch could find this information in ABS's "financial records" pursuant to Federal Rule of Civil Procedure 33(d).  (Scrimenti Dec., Ex. 1(b)-(c).)

Although initially agreeing to a traditional "copy and exchange" method of document production (Scrimenti Dec., ¶ 7 & Ex. 3, 4(a)-(b)), on August 19, 2011, Defendants' counsel, Mr. Kinder, stated that Defendants would instead require Bosch to make a physical inspection of *all* of Defendants' documents at its premises, including electronically stored information ("ESI") maintained on Defendants' computers (Scrimenti Dec., ¶ 9 & Ex. 8).  Defendants' repeated insistence on an inspection, rather than a traditional "copy and exchange," was ostensibly based on Bosch's Request No. 27, which seeks "all invoices."  Bosch made that Request because Defendants had previously falsified a jurisdictional declaration and in discovery "underreported" sales by some 40%—which ultimately led to the $152,082.65 sanctions award against them. Bosch now seeks *all* invoices because of these prior failures to produce all *relevant* invoices in jurisdictional discovery.  (*See* Docket No. 58; Scrimenti Dec., ¶ 5.)

After significant difficulties in scheduling this inspection—Bosch's counsel had to send at least eleven email messages and make several phone calls to Mr. Kinder to arrange the dates (Scrimenti Dec., ¶ 10 & Exs. 9(a)-(k))—Ms. Scrimenti traveled to California to inspect Defendants' documents on October 19 and 20, 2011 (Scrimenti Dec., ¶ 12).  The "inspection" was a very time-consuming and expensive exercise that required Bosch's retention of a computer-forensic vendor ("Stroz") to obtain images of Defendants' computers and a copy vendor to copy Defendants' paper production.  (Scrimenti Dec., ¶ 12.)  Bosch expended $16,752.76, not including attorney time, to copy over 80,000 hard-copy pages of Defendants' accounting documents, most of which, due to staples, uneven page sizes, and their condition, had to be copied manually on glass at the vendor's facilities.  (Scrimenti Dec., ¶ 13 & Ex. 13.)

Defendants' counsel initially advised Bosch's counsel that all of Defendants' ESI resided on four to five, and later, five to six, computer drives, but at Defendants' premises, Ms. Scrimenti learned for the first time that there were 14 computer drives to image.  (Scrimenti Dec., ¶ 15.)  Copying these drives necessitated some 30 hours of computer imaging time, and Bosch incurred $21,968.14, not including attorney time, for this initial process.  (Scrimenti Dec., ¶ 15 and Ex. 14.)  With travel, Bosch's counsel spent approximately 40 hours of attorney/partner time in attending the inspection at Defendants' premises.  (Scrimenti Dec., ¶ 12.)

Although he allowed Bosch's vendor to take all paper documents for copying, Mr. Kinder repeatedly has represented that the accounting data Bosch seeks can more readily and simply be compiled from the QuickBooks accounting program (Scrimenti Dec., ¶ 6), which resides on two of the 14 drives that were imaged (Scrimenti Dec., ¶ 9 & Ex. 8).

On the first day of the inspection, October 19, 2011, Mr. Kinder and Ms. Scrimenti jointly drafted a brief agreement regarding the treatment of the ESI being imaged from Defendants' computers.  (Scrimenti Dec., ¶ 16.)  Counsel agreed that the forensic vendor, Stroz, would image Defendants' drives and take control of those images.  Apart from provisions relating to other types of ESI, the agreement provided that Bosch could take *immediate* control of all QuickBooks master files and data from those images.  (Scrimenti Dec., ¶ 16 and Ex. 15(a).)  Late at night (1:30 a.m. the next day), however, Mr. Kinder emailed Ms. Scrimenti to advise that he had changed his mind and wanted to review the QuickBooks data and remove from it purported privileged payments to Defendants' attorneys:

> I know we agreed today that you could have the Quickbooks data first (per the attached [agreements attached to Scrimenti Dec. as Exs. 15(a)-(b)], however, I need you to not take possession of the Quickbooks data just until tomorrow while we work out one small issue I overlooked in our haste to work together today to get this done.  We can resolve it first thing tomorrow morning.  Just need to cover confidentiality and remove privilege payments is all.  <u>Shouldn't take but a few minutes to do once the image is made tonight.</u>

(Scrimenti Dec., ¶ 16 and Ex. 16 (emphasis added)).

But what Mr. Kinder said would "*take but a few minutes,*" still has yet to be produced. The following day, October 20, Defendants' counsel further explained his concern that the QuickBooks data could contain records of Defendants' payments to law firms and advised that those entries must be withdrawn from the computer images before Bosch's counsel could begin its review.  (Scrimenti Dec., ¶ 17.)  Mr. Kinder also withheld authorization for the copy vendor to release the comparable paper documents pending removal of the law firms' payment records from those as well.  (Scrimenti Dec., ¶ 14.)  While it is Bosch's position that documents showing invoices from or payments to attorneys are not privileged, Ms. Scrimenti advised that she had no objection, provided Defendants incur the cost of removing the electronic entries and not delay the production of the QuickBooks database.  (Scrimenti Dec., ¶ 17.)  Mr. Kinder emailed again on October 24, 2011, reiterating that the parties had agreed *not* to have Bosch take possession of the QuickBooks database until the privilege issue was "sorted out."  He left it to Bosch's counsel to get a cost quote from the forensic vendor.  (Scrimenti Dec., ¶ 18 & Ex. 18.)

On November 2, 2011, counsel spoke again, and Ms. Scrimenti advised Mr. Kinder that Stroz quoted $2,500–$3,500 to (1) provide additional image copies of the drives and (2) strip out the allegedly privileged information showing payments to law firms.  (Scrimenti Dec., ¶ 19.)  Mr. Kinder suggested that Bosch refrain from copying Defendants' hard-copy accounting documents because he thought the QuickBooks database would have all of the information Bosch requested from ABS.  (*Id.*)  Ms. Scrimenti agreed to consider other forensic vendors, including lower-cost vendors in Chicago and a vendor Mr. Kinder recommended, Robert Radus, of ACTForensic.  (*Id.*)

While out of town, Bosch's counsel emailed Mr. Kinder on November 9 and again on November 11, asking him to identify the law firm information he wanted removed by the hard

copy vendor and suggesting the parties confer on November 14 for purposes of "tackling document logistics for QuickBooks." (Scrimenti Dec., ¶ 21.) Following scheduling conflicts, the conference was held on November 22. (*Id.*) During that call, Ms. Scrimenti advised Mr. Kinder that Bosch was willing to transfer the work from Stroz to a lower-cost vendor of Mr. Kinder's choice (with a backup copy sent to a vendor of Bosch's choice in Chicago to hold should future comparison work be required). (Scrimenti Dec., ¶ 22.) She explained that Stroz had quoted $5,000 to make two duplicate images for that transfer and that it was Bosch's position that the expense should be split evenly between the parties. (*Id.*) Both counsel agreed that this would allow Defendants' vendor, Mr. Radus, to quickly retrieve the QuickBooks data that both parties wanted for settlement purposes, and Mr. Kinder reiterated that, once Bosch had the QuickBooks files, it would have all of the invoice information it needed. (*Id.*) Mr. Kinder advised, however, that Defendants would not agree to split the cost. (*Id.*)

In an November 23, 2011 email, Mr. Kinder reiterated Defendants' position that Bosch should pay all costs to transfer hard drive images to Defendants' forensic vendor, again expressed his concerns about the attorneys' fees payments in the QuickBooks data, and opined that review of the QuickBooks data would obviate the need to review the paper invoices:

> The problem is that the Quickbooks file contains some privileged information about attorney payments, amounts, etc. that we need to simply carve out. I believe this can be done simply and inexpensively (we discussed that [the original forensic vendor's] proposal was way too high) and have asked that you provide me with a copy of the hard drive images so that I can take the same to my forensic person (Bob Radus) to do the carve out.

> While I am not purporting to tell you how to do your job, the recommendation that I have made to you several times is that you thereafter examine the Quickbooks file and spot-check the data against the 70-100k documents reflecting paper invoices. Once you are satisfied that the data in the Quickbooks file accurately reflects the data in the paper invoices, then you can avoid incurring the costs of copying all of those documents.

(Scrimenti Dec., ¶ 23 & Ex. 24.)

Following the Thanksgiving holiday, in an effort to compromise and move the process along, Bosch agreed to pay the entire cost of transferring the images to Defendants' vendor, Mr. Radus at ACTForensic, with a backup copy to Bosch's vendor, 4Discovery, in Chicago. (Scrimenti Dec., ¶ 24.)  This was confirmed in the Parties' Joint Statement of Resolved and Unresolved Issues related to Bosch's Motion for Extension, filed with the Court on December 1, 2011 (Docket No. 119, p. 4), the relevant portion of which provided:

> Resolved Issues
> [P]ursuant to the October 2011 Agreement between counsel, Plaintiff has agreed, at Plaintiff's expense, to provide Defendants with a complete copy of the images taken from Defendants' computers during Plaintiff's October inspection at Defendants' premises.  Defendants have agreed, at Defendants' expense, to then produce from those images the QuickBooks file (i.e., accounts receivable/invoicing and accounts payable)—after Defendants have first removed any invoicing and/or accounts payable data as to legal counsel that they believe are protected as work product and/or under attorney-client privilege.  The parties agree that Plaintiff's access to this information will put all parties in a better position to have informed settlement discussions.

(Scrimenti Dec., ¶ 24 (emphasis added).)

Bosch then instructed Stroz to effect the transfer.  Stroz commenced work promptly on December 6, 2011, but three days later, Mr. Kinder had yet to provide his authorization to Stroz. (Scrimenti Dec., ¶ 25 & Ex. 25.)  He eventually responded that he had been sick, and in a series of emails, authorized the transfer to both vendors.  (*Id*.)  In the course of that exchange, Mr. Kinder noted:  "Our primary objective will be to get you the Quickbooks stuff so that we can then perhaps explore settlement discussions."  (Scrimenti Dec., ¶ 25 & Ex. 26.)

The fact that Defendants had yet to produce the QuickBooks data promised as early as October 19 was discussed extensively at the December, 8, 2011 hearing on Bosch's Motion for Extension.  (Scrimenti Dec., ¶ 26.)  The Court asked for an estimated time frame for Bosch to obtain Defendants' QuickBooks data, and Bosch's counsel shared her understanding that

Mr. Radus would have the images within a week and that he would then be able to provide them

to Bosch's counsel in another week or so:

> THE COURT: All right. So—so when do you think you'll get the invoice information? What's your best estimate of—of that at the present time?

> MS. SCRIMENTI: Our vendor tells me they can get these images to his—his vendor they think by the end of this week. So that timetable is probably better answered by Mr. Kinder. But it's—it's been from what I understand the stripping out of these really three law firm names is a pretty simple process. And, you know, I'm hopeful his vendor could then turn that around again maybe in another week or so, I don't want to put words in his mouth. But I think that's a relatively quick process. Now we then have, you know, I don't know how many pages of—of documents and invoices we have, but with the benefit of having it in the QuickBooks data base, you know, we're going to load a copy of the QuickBooks program on computers here and start doing our work to, you know, do various queries as well as look at individual invoices. . . . I've got, you know, young lawyers and paralegals who are going to start that process right away. But I don't know the volume I'm dealing with so it's difficult for me to say that will take us a week, or maybe two weeks. But I—I do assure you we are going to start in on that immediately as soon as we get it.

> THE COURT: All right. So, for example, assuming that the copied images are provided to the defendant by the end of this week, today being the -- the 8th, the end of this week is just one day away. That the—you would hope that this process of removing these invoices relating to attorneys would be accomplished within a week, that's by the 16th. And then you believe that this team of—of young lawyers and—and others will be able to review that material by when?

> MS. SCRIMENTI: I—I think in fairness with the—the holidays, if we could have till, you know, a few days after the first of the year that would be most appreciated, Your Honor.

> THE COURT: All right. So that Friday, the first Friday in January is the 6th. Is that something that makes sense to you?

> MS. SCRIMENTI: Yes, it does. And of course that's one piece of it. We have the rest of the electronic discovery but yes. I think that's one piece that makes a lot of sense.

> THE COURT: All right.

(Scrimenti Dec., ¶ 26, Ex. 27, Tr., at pp. 21–23 (Docket No. 127).)

The discussion returned to the QuickBooks documents later in the hearing when the

Court sought to confirm a time by which Bosch's counsel would be able to review that data:

> THE COURT:  I was really talking about the completion of that process. That is that they—they need to review them for these what are arguably or potentially privilege items and that then you would have to review those once they were given to you and you thought that that could be accomplished by January the 6th. So I—I guess I'm just trying to focus on the—the end of that process which was I thought based on your estimate, January the 6th. So I'm asking Mr. Kinder whether he thinks that that is a doable goal, or if he objects to allowing the—this process to—to proceed forward based on some other reason.
>
> MR. KINDER: Your Honor, I—I do object entirely to the—to the request for the 90 day extension as a whole. And—and the reason for that is this—this continual sort of bait and switch and delay mentality. . . .

(Tr., at pp. 33–34.)  Mr. Kinder went on to argue against the requested extension, generally, but did not dispel the understanding that production of Defendants' QuickBooks database by January 6, 2012, would not be a problem.  Thus, the expectation on December 8, 2011, was that Defendants' vendor would "turn around" the scrubbed database within a few days and Bosch's attorneys would have time to review it by January 6, 2012.  (Scrimenti Dec., ¶ 27.)

The day after the hearing, December 9, 2011, Stroz confirmed that it sent the computer images to Defendants' vendor, Mr. Radus, and to the backup vendor in Chicago.  (Scrimenti Dec., ¶ 28 & Ex. 28(a).)  However, Mr. Radus was not at the address Mr. Kinder provided, so delivery was delayed until December 14.  (Scrimenti Dec., ¶ 28 & Exs. 28(b)-(c).)  Bosch paid $5,011.04 to Stroz for this transfer.  (Scrimenti Dec., ¶ 28 & Ex. 29.)

By January 17, 2012,  Bosch's counsel still had not received the QuickBooks data from Mr. Radus.  (Scrimenti Dec., ¶ 30.)  Accordingly, Ms. Scrimenti sent Mr. Kinder another email regarding Defendants' failure to provide the QuickBooks database and other discovery issues.  (Scrimenti Dec., ¶ 30 & Ex. 30.)  Mr. Kinder agreed to check with Mr. Radus on the progress.  (Scrimenti Dec., ¶ 30 & Ex. 31.)

In an email dated January 24, 2012, Mr. Kinder for the first time advised that he was informed by Mr. Radus that deleting the claimed privileged attorneys' fee entries was "more

involved than previously thought." (Scrimenti Dec., ¶ 31 & Ex. 32.) Counsel had another conference that day, which Mr. Kinder memorialized in another email. He advised that Bosch's counsel could take possession of the QuickBooks file without Defendants' first conducting a privilege review *if* Bosch would agree that Defendants were not waiving claims of privilege. (Scrimenti Dec., ¶ 31 & Ex. 33.) In other words, Mr. Kinder finally decided on January 24, 2012, to do what he agreed to do on October 19, 2011: provide immediate access to Defendants' QuickBooks database. Ms. Scrimenti responded, confirming that agreement, but clarifying that Bosch also was not waiving its right to assert that attorneys' fees documents are not privileged. She asked that the database be provided by Friday, February 3, so her colleagues could review it prior to Defendants' counsel's scheduled visit to Chicago to inspect Bosch's documents. (Scrimenti Dec., ¶ 31 & Ex. 34.)

Defendants' counsel visited the offices of Bosch's counsel in Chicago on February 7 and 8, 2012. Over those two days counsel discussed the fact that Defendants still had not produced the QuickBooks data originally promised on October 19. (Scrimenti Dec., ¶ 32.) Mr. Kinder stated that he and Mr. Radus were exchanging voicemail messages, but that he could not provide Bosch's counsel with a date on which the QuickBooks data would be produced. (*Id.*) Ms. Scrimenti suggested that if Defendants' vendor was not handling the work promptly enough, Bosch could instead have the work done by its vendor holding a backup copy in Chicago, who had quoted approximately $1,000 to extract and produce the database, subject to Defendants' written authorization and agreement to pay those fees. (*Id.*) Mr. Kinder said he would recommend this to his clients, and would report back *in a day or two.* (*Id.*)

*Two more weeks* have now passed without another word from Defendants. (Scrimenti Dec., ¶ 33.) It has now been nearly *eleven months* since Bosch requested this information, and more than *four months* have passed since Defendants agreed Bosch's counsel could take

possession of that data "immediately."  By making an unsupported claim of privilege

necessitating removal of documents, which, per Defendants' counsel, "[s]houldn't take but a few

minutes," Defendants have prevented Bosch's counsel from accessing data that all parties agree

is essential to trial and resolution of this case.  Because discovery closes on March 30, 2012,

Bosch's counsel has begun the much more tedious process of reviewing the hard-copy invoices

(the ones that Mr. Kinder suggested were not worth the effort of copying).  (Scrimenti Dec.,

¶ 35.)  This is a vastly more expensive, labor-intensive, and less accurate method of assessing

Defendants' sales and Bosch's damages.

        In sum, Bosch's expenses associated with copying the paper documents and imaging the

computer hard drives total $43,731.94 in vendor costs, *plus* substantial legal fees incurred for the

trip to California, the voluminous, needless communications over these issues, and the

preparation of this Motion.  (Scrimenti Dec., ¶ 36)

## II.    <u>ARGUMENT</u>

        There is no dispute that Bosch is entitled to review the QuickBooks database.  As set

forth above, communications between counsel and statements to the Court confirm this.  Indeed,

Defendants agreed to produce the QuickBooks database *at their own expense* in the parties'

December 1, 2011, Joint Statement.  (Docket No. 119, p. 4.)  Despite these representations and

the lack of any underlying dispute that Bosch is entitled to the QuickBooks database, Defendants

continue to delay making it available to Bosch's counsel, making excuses to prevent access to

this key information.  Most recently, Defendants' vendor has made no discernible progress to

remove the allegedly privileged entries from the database, or simply turn it over, despite having

had a copy of it in his possession for over two months.

        These tactics have caused Bosch to expend substantial time and effort—and now have

forced Bosch to file and brief the instant Motion—to obtain access to the database from

Defendants.  Bosch is no closer to reviewing these crucial and relevant digital records than it was on October 19 when Defendants stated that Bosch's counsel could review them "immediately." It now appears that Defendants' claim of privilege was just a roadblock intended to delay Bosch's inspection of the database.  Accordingly, Bosch should be granted access by the Court immediately to the database and Defendants should be sanctioned to reimburse the costs Bosch has incurred as a result of these efforts.

**A.     Defendants' Ongoing Failure To Permit Inspection Of The QuickBooks Database Constitutes A Failure To Respond To Bosch's Discovery Requests, And Now Requires An Order From The Court Compelling Such Production.**

ABS must make its QuickBooks database available for inspection to respond properly to at least five of Bosch's interrogatories and ten of its requests for production to ABS regarding, generally, Defendants' sales, costs, profits, invoices, and accounts.[2]  Defendants recognize that Bosch is entitled to inspect these records, as evidenced by their repeated agreement to make the database available.  Defendants, however, have failed to make good on these promises.

**1.     Bosch Is Entitled To Discovery Of The QuickBooks Database In Response To Bosch's Discovery Requests To ABS.**

Defendants' ongoing refusal to permit inspection of the QuickBooks database constitutes a failure to respond to and/or supplement a number of properly-issued discovery requests seeking information and documents, and including ESI.  Bosch's requests are undeniably relevant to the claims and damages at issue in this action, and must be answered completely.

In response to Bosch's interrogatories relevant to this Motion, ABS relied on its option under Rule 33(d) to produce business records that would reveal the financial information Bosch

---

[2] Bosch's discovery requests that would be answered by inspection of the QuickBooks database include Bosch's Interrogatory Nos. 2, 4–5, and 9–10 and Request for Production Nos. 1–5, 18, 20, and 25–27 to ABS.  (*See* Scrimenti Dec., Exs. 1–2.)  Bosch issued these requests on April 5, 2011.

seeks, directing Bosch generally to Defendants' "financial records."  (Scrimenti Dec., ¶ 3 & Exs.

1(b)–(c).)  A responding party may rely on such documents in lieu of answering an interrogatory

"[i]f the answer to an interrogatory may be determined by examining, auditing, compiling,

abstracting, or summarizing a party's business records (including electronically stored

information), and if the burden of deriving or ascertaining the answer will be substantially the

same for either party."  Fed. R. Civ. P. 33(d). This option to produce business records requires

that the responding party specify "the records that must be reviewed, in sufficient detail to enable

the interrogating party to locate and identify them as readily as the responding party could."  *Id*.

To date, the "financial records" Defendants have produced are 80,000 pages of hard copy

accounts payable and accounts receivable documents, most of which are irrelevant to the claims

here.  Producing documents in this manner when Defendants have a searchable electronic

database of their financial records does not satisfy Rule 33(d)'s requirement that the burden of

ascertaining the answer to an interrogatory from records be "substantially the same for either

party."  If ABS wishes to rely on Rule 33(d) as a response to Bosch's interrogatories, it must

respond with documents produced in a usable form.  *See Powerhouse Marks, L.L.C. v. Chi Hsin

Impex, Inc.*, No. 04-CV-73923-DT, 2006 WL 83477, at *3-4 (E.D. Mich. Jan. 12, 2006)

(granting motion to compel production of sales data in a usable form because "given the nature

of the raw data and *the fact that it is much more easily used in conjunction with a financial

database*, Defendant's burden in deriving the information sought in Plaintiffs' interrogatories is

significantly less than Plaintiffs'") (emphasis added).

As in *Powerhouse Marks*, the least burdensome method for Bosch to obtain the answers

to its interrogatories and information responsive to its requests for production is for its counsel to

review Defendants' financial database, a point ABS does not dispute.  The alternative requires

Bosch's counsel tediously to scour 80,000 paper invoices containing what Mr. Kinder represents

to be the exact same invoice data.  By refusing to make the database available to Bosch, ABS has made "an evasive or incomplete" response to all of these discovery requests, which is tantamount to a failure to respond.  *See* Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv) & (a)(4).

> ### 2. Records Of Accounts Payable To Law Firms Are Not Privileged, And, Even If They Were, Do Not Justify Defendants' Ongoing Delay In Producing The QuickBooks Database.

Defendants cannot avoid their discovery obligations by relying on the inapt and bald assertion that entries in the QuickBooks database showing Defendants' accounts payable to law firms constitute privileged communications or attorney work product.  The law is clear that such records are not privileged.  "In general, the fact of legal consultation or employment, clients' identities, attorney's fees, and the scope and nature of employment are not deemed privileged." *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985); *see also United States v. Haddad*, 527 F.2d 537, 538-39 (6th Cir. 1975), *cert. denied*, 425 U.S. 974 (1976) (amount paid or owed by a client to his attorney not privileged except in exceptional circumstances).  Defendants have never represented that the records showing payments to their attorneys contain any specific privileged information, such as the identity of federal statutes researched or confidential information regarding legal advice.  *Cf. Laethem Equip. Co. v. Deere & Co.*, No. 05-CV-10113-BC, 2007 WL 2873981, at *13 (E.D. Mich. Sept. 24, 2007).

Defendants' unsupported reliance on bald, general assertions of privilege should not permit them to delay production.  Plaintiff's counsel had no objection to removal of the allegedly privileged information.  If Defendants were serious about honoring their discovery obligations, then they and their vendor should have used the last two months to address the problem.  Instead, Defendants have further delayed production of the QuickBooks database, only serving to increase Bosch's costs, thwart progress in this litigation, and delay any possibility of settlement. Defendants and their counsel have had ample opportunity to address their alleged concerns

regarding the arguably privileged content in the QuickBooks database, but have failed to do so over the course of the last *11 months* since the discovery was propounded, and during the *four months* since the inspection at Defendants' premises and imaging of the hard drives.

**B.    Bosch Is Entitled To Sanctions As Compensation For Defendants' Ongoing Discovery Misconduct.**

Defendants' ongoing failure to make the QuickBooks database available for inspection has forced Bosch to incur substantial costs, including $43,731.94 in vendor costs, as well as considerable attorney's fees.  For the reasons explained below, sanctions are proper pursuant to Rules 37(a)(5)(A) and 37(c), as well as the Court's inherent power.

**1.    Sanctions Are Proper Under Rule 37(a)(5)(A).**

Pursuant to Rule 37(a)(5)(A), if the Court grants this Motion to Compel or if Defendants grant Bosch access to the QuickBooks database after Bosch files this Motion, "the court *must*, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." (emphasis added).  As in *Powerhouse Marks*—a trademark-infringement case in which the court granted a motion to compel production of a financial database in a more usable form after the party responding to discovery requests already produced paper records depicting similar information, 2006 WL 83477, at *4-5—Rule 37(a) sanctions are appropriate here.

**a)    None Of The Exceptions In Rule 37(a)(5)(A)(i)-(iii) That Might Excuse An Award Of Sanctions Applies Here.**

ABS does not qualify for any of the exceptions to Rule 37(a)(5)(A)'s requirement that it pay Bosch's expenses incurred in making this Motion.  *See* Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). First, Bosch satisfied the requirements of Rule 37(a)(5)(A)(i) by filing this Motion only after making a substantial and good faith effort to obtain discovery of the QuickBooks database.

Indeed, Bosch incurred great expense in visiting Defendants' premises in October 2011, and Bosch's counsel has corresponded regularly, consistently, and extensively with Mr. Kinder thereafter in an ongoing effort to obtain the QuickBooks database. Moreover, Bosch agreed to pay the full cost of transferring the QuickBooks database to Defendants' vendor so that he could scrub the allegedly privileged information. Despite all of these efforts to obtain access to the QuickBooks database, however, Defendants and Mr. Kinder continue to deny Bosch access to it.

Next, ABS's refusal to grant Bosch access to the QuickBooks database is not "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii). Under Rule 37(a), an action is "substantially justified" if "there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *See Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)); *Boles v. Lewis*, No. 1:07-CV-277, 2009 WL 2021743, at *2 (W.D. Mich. July 7, 2009) (applying interpretation of "substantially justified" in *Doe* and *Pierce* to find discovery failure was not substantially justified). The party opposing sanctions bears the burden of proving that it is substantially justified in its action. *Cf. Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (holding that it is the potentially sanctioned party's burden to prove a failure to disclose or supplement is "substantially justified" or harmless).

Defendants cannot now argue that their actions are "substantially justified" when they previously agreed that Bosch's counsel is entitled to inspect the QuickBooks database, Defendants have failed to grant Bosch access to the database more than *four months* after Mr. Kinder first agreed Bosch's counsel could have that information "immediately." Further, any argument that they are "substantially justified" in failing to make the QuickBooks database available for inspection because of the alleged concerns over privileged entries in the database

also fails because more than two months have passed since Bosch's vendor supplied Defendants' vendor with a copy of the database to remove the allegedly privileged content.[3]

Finally, no "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(iii). To the contrary, Defendants' ongoing refusal to make the QuickBooks database available to Bosch is consistent with their behavior throughout discovery in case. As discussed at length above, in prior briefing (*see, e.g.*, Docket No. 58), and in the Court's Order awarding sanctions against Defendants (Docket No. 105), Defendants have exhibited a longstanding pattern of delay and deceit in responding to discovery requests.

### 2.   <u>Sanctions Are Proper Under Rule 37(c).</u>

By failing to make the QuickBooks database available to Bosch for over 11 months, Defendants have failed to supplement their discovery responses, and thus also are subject to sanction under Rule 37(c). Rule 26(e) provides that a party who has responded to a discovery request "must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect" if the corrective information has not otherwise been made known to the other parties. Rule 37(c) provides for certain sanctions if a party fails to provide information as required by Rule 26(e), unless the responding party shows its failure was substantially justified or is harmless. *See Roberts*, 325 F.3d at 782 (holding that it is the potentially sanctioned party's burden to prove

---

[3] Moreover, Defendants' unsupported argument that invoices from law firms are privileged does not support a claim that they are substantially justified in refusing to make the database available for inspection. *See State Farm Mut. Auto. Ins. Co. v. Hawkins*, No. 08-CV-10367-DT, 2008 WL 5383855, at *5 (E.D. Mich. Dec. 23, 2008) (rejecting responding party's argument it was substantially justified and granting requesting party fees under Rule 37(a)(5)(A)). As in this case, the party responding to the motion to compel "offered only bald assertions regarding why information about the Documents is privileged and merely quoted case law that stated the legal standard, providing little legal support or analysis as to why the standard applied to [responding party] although it was [responding party's] burden to demonstrate privilege." *Id.*

violation was "substantially justified" or harmless to avoid Rule 37(c) sanctions). Included among these sanctions is the court's ability to order "payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A).

ABS responded to Bosch's discovery requests in May 2011, but still has not made the QuickBooks database available to Bosch, despite relying on Rule 33(d) in its responses to the interrogatories at issue. Accordingly, Bosch has violated Rule 26(e) by not timely supplementing its responses, which required the production of the QuickBooks database. *See Guar. Residential Lending, Inc. v. Homestead Mortg. Co.*, No. 04-CV-74842, 2009 WL 2390524, at *4 (E.D. Mich. July 31, 2009) (finding failure to produce documents required by discovery requests violated Rule 26(e) and granting requesting party's reasonable expenses); *see also Persh-Bogden v. Kraus Carpet Mills*, No. 08-13652, 2009 WL 1449095, at *1-2 (E.D. Mich. May 21, 2009) (awarding reasonable expenses, including attorney's fees, as sanction under Rule 37(c)). Even if Defendants hereafter make the database available, such supplement still would not be timely because Defendants have had the QuickBooks database in their possession since well before the date on which Bosch served its discovery requests. *See SPX Corp. v. Bartec USA, LLC,* 574 F. Supp. 2d 748, 756 (E.D. Mich. 2008) (party in possession of information for a year prior to disclosure did not timely disclose).

Defendants' failure has caused Bosch to incur substantial costs, including: (1) vendor costs to image Defendants' computers, and then copy the QuickBooks database at Mr. Kinder's behest so that Defendants' vendor could remove any allegedly privileged entries from the database; (2) vendor costs to copy more than 80,000 paper copies of Defendants' invoices, which may have been unnecessary if Defendants had made the QuickBooks database available to Bosch's counsel on October 20, 2011, as expected; (3) attorney's fees incurred from Bosch's counsel's repeated correspondence with Mr. Kinder and vendors to attempt to resolve

- 18 -

Defendants' concerns; and (4) attorney's fees incurred to prepare this Motion.  Bosch requests

that the Court grant sanctions to reimburse Bosch for these expenses—which would not have

been incurred but for Defendants' ongoing delay.

### 3.      The Court May Rely On Its Inherent Power To Issue Sanctions.

The Court possesses the inherent power to sanction Defendants' conduct in addition to

the explicit authority provided by Rule 37.  *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46

(1991).  Included in a court's inherent power is the ability to "assess attorney's fees when a party

has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id.* at 45 (quotation

marks and citation omitted).  "The imposition of inherent power sanctions requires a finding of

bad faith or conduct tantamount to bad faith."  *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir.

2003) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980); *First Bank of

Marietta v. Hartford Underwriters Insurance Co.,* 307 F.3d 501, 517 (6th Cir. 2002)) (quotations

omitted).  Although a court should consider applicable rules or statutes that may also permit

sanctions over the same conduct, it need not "exhaust consideration of sanctions under other

relevant rules and/or statutes."  *First Bank of Marietta*, 307 F.3d at 513.  Rather, "the court's

inherent power is broad and can be called upon not only to fill-in in the interstices between

particular rules of conduct, but also may be referred to in addition to said rules . . . ."  *Wolfe v.

GC Services Ltd. Partnership-Delaware*, 2009 WL 230637, at *6 (E.D. Mich. Jan. 30, 2009).

Defendants' ongoing failure to produce the QuickBooks database based on a variety of

unsupportable and plainly dilatory justifications—and on the heels of the deception Defendants

attempted to perpetrate on the Court during jurisdictional discovery—is sufficient to show that

Defendants are undermining discovery in this case, either with "bad faith or conduct tantamount

to bad faith."  *Roadway Express*, 447 U.S. at 767.  Defendants' withholding of this critical

evidence, now nearly 11 months after Bosch served its discovery requests, empowers the Court

to exercise its inherent power to sanction Defendants.  *See Scott v. Metro. Health Corp.*, 2005 WL 3434830, at *6 (W.D. Mich. Dec. 13, 2005), *aff'd* 234 Fed. App. 431 (6th Cir. 2007) (awarding $1.6 million in attorneys' fees as a sanction under the court's inherent powers where the sanctioned party, among other indiscretions, concealed evidence); *see also DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (affirming sanctions under the court's inherent power where "the record reflects a pattern of behavior which could reasonably construed as a bad faith effort to thwart plaintiff's discovery efforts").

## III.   CONCLUSION

For the foregoing reasons, Bosch respectfully requests that the Court grant its Motion on an expedited basis and order that Bosch have immediate access to ABS's QuickBooks database, at Defendants' expense.  Bosch also requests that the Court order Defendants to pay Bosch's expenses incurred in making this Motion, including Bosch's attorney's fees and the other discovery vendor costs Bosch has expended as a result of Defendants' ongoing delay in making critical evidence available for inspection, pursuant to Rules 37(a)(5)(A) and 37(c), as well as any additional relief the Court deems proper under its own inherent power.

Respectfully submitted,

Dated:  February 24, 2012

WIENNER & GOULD, P.C.
Seth D. Gould (Bar No. P45465)
950 W. University Drive, Suite 350
Rochester, Michigan 48307
Telephone:  248-841-9400
Fax:  248-652-2729
E-mail:  sgould@wiennergould.com

PATTISHALL, McAULIFFE, NEWBURY,
  HILLIARD & GERALDSON LLP

By: s/Belinda J. Scrimenti_____
    Belinda J. Scrimenti (Bar. ID No. 6288885)
    Bradley L. Cohn
    Jeffrey A. Wakolbinger
    311 S. Wacker Drive, Suite 5000
    Chicago, Illinois 60606
    Telephone:  312-554-8000
    Fax:  312-554-8015
    E-mail:  bscrimenti@pattishall.com

*Attorneys for Plaintiff Robert Bosch LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2012, I electronically filed the foregoing Plaintiff's Motion to Compel Production of QuickBooks Database and for Sanctions; Request for Expedited Ruling and Memorandum in Support with the Clerk of the Court using the ECF system which will send notification of such filing to local counsel for Plaintiff, Seth D. Gould, Esq., Wienner & Gould, P.C., 950 W. University Drive, Suite 350, Rochester, Michigan 48307, and the following counsel for Defendants: Brian P. Kinder, The Kinder Law Group, APC, 19200 Von Karman Ave., Fourth Floor, Irvine, California 92612, and Jeffrey P. Thennisch (P51499), Dobrusin & Thennisch, PC, 29 W. Lawrence Street, Suite 210, Pontiac, Michigan 48342.  I hereby certify that there are no non-ECF participants on whom the papers should be served.

Dated:  February 24, 2012          <u>s/ Belinda J. Scrimenti</u>
                                   Belinda J. Scrimenti
                                   (Bar. ID No. 6288885)
                                   311 S. Wacker Drive, Suite 5000
                                   Chicago, Illinois 60606
                                   Telephone:  312-554-8000
                                   E-mail:  bscrimenti@pattishall.com