UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BOSCH LLC,

    Plaintiff,

v.

A.B.S. POWER BRAKE, INC., PEDRO GOMEZ, LUCIO GOMEZ, and GUILLERMO GOMEZ,

    Defendants.
_____/

Case No. 09-14468

Honorable Patrick J. Duggan

## ORDER AMENDING DEFAULT JUDGMENT

In this action, Robert Bosch LLC ("Plaintiff") alleges violations of Michigan and federal law in connection with the sale of vehicle braking systems. On April 26, 2012, defendants A.B.S. Power Brake, Inc., Pedro Gomez, Lucio Gomez, and Guillermo Gomez (collectively, "Defendants") withdrew their answer to Plaintiff's Complaint, dismissed their counterclaims against Plaintiff, and consented to an entry of default and judgment. *See* Dkt. # 149. On May 18, 2012, the Court entered a default against each defendant and ordered that Plaintiff "is entitled to judgment against Defendants consistent with the prayer for relief set forth in the complaint filed by Plaintiff." *See* Dkt. # 150. Plaintiff filed a motion to amend the default judgment to include specific measures of injunctive relief, damages, and an award of attorneys' fees and costs. The Court granted this motion, requiring Plaintiff to submit a proposed Amended Order of Default Judgment as well as the evidence necessary to establish damages, attorneys' fees, and costs. Plaintiff submitted

these materials on July 2, 2012.  Defendants have not made any filings in response.

Plaintiff's proposed Amended Order of Default Judgment would permanently enjoin Defendants from directly or indirectly infringing on Plaintiff's registered and common law marks in any manner, using marks confusingly similar to Plaintiff's marks, and engaging in conduct to deceive consumers as to the origin of Defendants' parts.  Defendants would also be required to deliver to Plaintiff for destruction: (1) all of its vehicle braking systems bearing Plaintiff's marks; (2) all labels, signs, packaging, and promotional material imitating or bearing Plaintiff's marks; and (3) any molds or other means used for making such items.

Plaintiff's proposed order would also award monetary relief of $12,875,997.96.  This amount includes: (1) $3,931,220.00 of Defendants' estimated profits from infringement of Plaintiff's marks, trebled as a result of willful infringement and unfair competition, for a total compensatory award of $11,793,660.00; (2) attorneys' fees of $993,309.00; and (3) $89,028.96 in costs.

The Court has reviewed Plaintiff's proposed order, and is satisfied that the injunctive relief set forth in the order is appropriate to prevent future infringement by Defendants.

The Court next considers the proposed monetary award.  Plaintiff's estimate of Defendants' illegal profits is based on analysis of Defendants' "QuickBooks" accounting database, and is limited to profits obtained from sale of the "Hydro-Boost" and "Hydro-Max" products at issue in this case.  *See* Wakolbinger Decl. ¶¶ 13-20.  Plaintiff can only estimate damages in this case because Defendants apparently failed to provide information relating to cash sales.  Wakolbinger Decl. ¶ 22.  Plaintiff also had difficulty deciphering

Defendants' accounting records to determine which sales involved infringing products. The Court is satisfied, however, that the process used by Plaintiff to obtain its estimate was not overinclusive; that is, the damages estimate does not include profits from the sale of non-infringing products. Plaintiff's analysis suggests damages of $3,931,220.00. The Court believes that this estimate is reasonable, particularly given the cumbersome process that was required to obtain and analyze Defendants' accounting data.

Plaintiff has asked for trebling of these damages pursuant to 15 U.S.C. § 1117, which states that in cases of intentional use of counterfeit marks, "the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee." 15 U.S.C. § 1117(b). By consenting to a default, Defendants have admitted to intentional unauthorized use of Plaintiff's marks. *See* Compl. ¶ 25.[1] The Court finds no extenuating circumstances justifying a reduction of these statutory damages. The Court therefore concludes that trebling of damages is appropriate, resulting in a compensatory award of $11,793,660.00.

The Court also considers Plaintiff's request for attorneys' fees totaling $993,309.00. Because Defendants have admitted to intentional use of counterfeit marks, an award of attorney's fees is appropriate. *See* 15 U.S.C. § 1117(b). "In an attorneys' fee case, the primary concern is that the fee awarded be 'reasonable.'" *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)).

---

[1] The Court notes that "[o]nce a default is entered against a defendant, that party is deemed to have admitted all of the well pleaded allegations in the Complaint." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S. Fid. & Guar.*, 661 F.2d 119, 124 (9th Cir. 1981)).

3

"A reasonable fee is 'one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys.'" *Reed*, 179 F.3d at 471 (quoting *Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1541, 1548 (1984)) (alteration in original). "The starting point for determining a reasonable fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate." *Gonter*, 510 F.3d at 616 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939 (1983)). The Court may consider a number of other factors in determining whether an increase or decrease from the lodestar is warranted, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 434 n.9, 103 S. Ct. at 1940 n.9. The Court must provide a clear and concise explanation of its reasons for the fee award. *Gonter*, 510 F.3d at 616.

The Court has reviewed the lodestar calculation proposed by Plaintiff. Plaintiff's counsel documents a total of 2,563.80 hours billed, and has provided a detailed itemization of these hours for each attorney and major task in this litigation. *See* Scrimenti Decl. ¶ 26. Plaintiff's counsel has excluded from this total hours spent opposing Defendants' motion to dismiss, as these billings were included in the Court's previous award of sanctions. *See* 8/25/11 Order at 9-10, Dkt. #105. This litigation has spanned more than two years and involved an extensive amount of contentious discovery. In this light, the Court believes

that the hours billed are reasonable for the work performed by Plaintiff's counsel.

The Court also considers the billing rate requested by Plaintiff's counsel. "A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the 'prevailing market rate in the relevant community.'" *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Blum*, 465 U.S. at 895, 104 S. Ct. at 1547). "[T]he 'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Id.* (citing *Hudson v. Reno*, 130 F.3d 1193, 1208 (6th Cir. 1997)). The prevailing market rate should not exceed the amount necessary to cause competent legal counsel to perform the work required. *Gonter*, 510 F.3d at 616 (citing *Coulter v. Tennessee*, 805 F.2d 146, 148-49 (6th Cir. 1986)).

Plaintiff's counsel has requested rates ranging from $220 per hour for paralegals to $600 per hour for a senior partner. Plaintiff has provided survey data from the National Law Journal indicating that these rates are within the "high" range of rates used by large general practice firms in the Detroit area that have intellectual property groups.[2] *See* Pl.'s Br. Ex. 4. Plaintiff maintains that its counsel's rates are reasonable when compared with other firms handling intellectual property litigation of this nature, and the Court is satisfied that Plaintiff's counsel is well-qualified to handle such disputes. *See* Scrimenti Decl. ¶¶ 3-6. Plaintiff has established that its counsel's billing rates are representative of that which similarly situated firms in the Detroit-area legal market would charge for the services

---

[2] The Detroit firms providing billing information in this survey included Butzel Long, P.C., Dickinson Wright PLLC, and Dykema Gossett PLLC.

5

provided here.  The Court therefore concludes that Plaintiff's requested attorneys' fee award of $993,309.00 is appropriate.  The Court does not believe that variation from the lodestar is warranted by the facts of this case.

Plaintiff also seeks to recover costs totaling $89,028.96.  Pursuant to 15 U.S.C. 1117(a)(3), a prevailing plaintiff is entitled to recover its costs.  Plaintiff has provided a detailed itemization of these expenses.  *See* Scrimenti Decl. ¶ 27.  Most are related to discovery, including photocopying over 170,000 pages of documents, imaging over 80,000 pages of hard-copy documents, and forensic imaging of a number of computer hard drives.  These costs were incurred because Defendants refused to provide Plaintiff copies of certain records and required Plaintiff to access those records at their California offices.  Wakolbinger Decl. ¶¶ 5, 19.  Plaintiff's counsel has excluded costs incurred in opposing Defendants' motion to dismiss, Scrimenti Decl. ¶ 27, as those costs were included in the Court's prior sanctions award.  *See* 8/25/11 Order at 9, Dkt. # 105.  The Court is satisfied that Plaintiff's costs are reasonable given the extensive and cumbersome discovery in this case.  The Court therefore awards Plaintiff the requested $89,028.96 in costs.

As a result, the Court concludes that Plaintiff has sufficiently justified the requested monetary award of $12,875,997.96 in damages, attorneys' fees, and costs.

Finally, Plaintiff requests that the Court's prior award of sanctions in the amount of $152,082.52 be converted to a judgment.  According to Plaintiff, Defendants have not paid these sanctions, despite the Court's February 15, 2012 Order requiring payment within thirty days.  Plaintiff also notes that Magistrate Judge Michael Hluchaniuk ordered Plaintiff to pay $10,000 to Defendants contemporaneously with the payment of these

6

sanctions, and therefore requests that the Court enter judgment for the sanctions award less $10,000. The Court is satisfied that the unpaid sanctions award should be converted to a judgment, and shall therefore enter Plaintiff's proposed sanctions judgment in the amount of $142,082.52.

Accordingly,

The Court shall enter the default judgment and sanctions judgment proposed by Plaintiff.

**SO ORDERED.**

              s/PATRICK J. DUGGAN
              UNITED STATES DISTRICT JUDGE

Copies to:

Belinda J. Scrimenti, Esq.
Seth D. Gould, Esq.
Brian Kinder, Esq.
Jeffrey P. Thennisch, Esq.